From R. H. Klein, Sunbury, Pa.

## Commonwealth v. Piggott

*Earl E. Richards*, district attorney, *E. Leroy Keen*, assistant district attorney, and *William S. Bender*, for Commonwealth.

*Douglass D. Storey* and *John B. Pearson*, for defendant.

WICKERSHAM, J., November 13, 1934.—The defendant was indicted and tried in the court of quarter sessions of this county for unlawfully, wilfully, and maliciously neglecting and refusing to contribute reasonably to the support and maintenance of his child born out of lawful wedlock, which trial resulted in his conviction. The pending motions in arrest of judgment and for a new trial followed.

### Motion in arrest of judgment

In the first paragraph of the motion in arrest of judgment, it is alleged that "The Act of July 11, 1917, P. L. 773, as amended by the Act of July 21, 1919, P. L. 1075, 18 PS §§2161 et seq., does not apply where both the mother and private prosecutrix, and her child, are bona fide nonresidents of the Commonwealth of Pennsylvania, and the uncontradicted testimony shows that

the said mother and private prosecutrix is a bona fide resident of Brattleboro, Vermont, and her said illegitimate child is a bona fide resident of the Commonwealth of Massachusetts, and neither said mother and private prosecutrix, nor her said child, is or intends to be a resident of this Commonwealth, and hence this defendant cannot be found guilty of violating the above legislation which is the basis of the indictment."

It appears this motion will require evidence to support it, for the reason that the indictment is in strict conformity with the requirements of the Act of 1917. Judgments can be arrested in criminal cases only for cause appearing upon the face of the record. The record to be considered consists of the indictment, the plea and issue, and verdict. The evidence in the case forms no part of the record within the rule that a motion in arrest of judgment can be based only on matters of record, and hence defects which appear only by aid of evidence cannot be the subject of such a motion. See Commonwealth v. Bateman, 92 Pa. Superior Ct. 53, 55. The motion in arrest of judgment is therefore overruled.

### Motion for a new trial

In the motion for a new trial, the only reasons pressed are that the verdict is against the law and that we erred in overruling defendant's motion for a directed verdict and in refusing defendant's point for charge. As we shall presently demonstrate, we erred in overruling defendant's motion for a directed verdict and the point for charge, and it therefore follows that the verdict rendered in this case is against the law.

We will first consider the evidence produced at the trial. It appears from the testimony that Marjorie Bond, a single woman, residing in Brattleboro, Vt., gave birth to an illegitimate female child in Boston, Mass., in October 1932. It further appears in the testimony that neither the prosecutrix, Marjorie Bond, nor the child, Elizabeth Bond, was at the time the pregnancy occurred, at the time the child was born, or at the time of the trial of the indictment in this prosecution, a resident of or domiciled in the Commonwealth of Pennsylvania. The prosecutrix, Marjorie Bond, and her child, Elizabeth Bond, came into this county for the purpose of maintaining this prosecution. It did not appear from the evidence that they ever resided or intended to reside in this Commonwealth.

The question involved is: Can a resident of Pennsylvania be convicted under the Act of 1917 for failure to support an illegitimate child begotten in Vermont, where its mother then lived and still resides, and born in Massachusetts, where it still resides?

The act itself does not refer to the domicile or residence of any of the interested parties, father, mother, or child. The defendant was within the territorial jurisdiction of the Pennsylvania courts. The child was only 22 months old at the time of the trial, and therefore the prosecution was begun within 2 years after the birth of the child, as required by the Act of 1919.

The contention of counsel for the defendant raises an interesting question which we shall now proceed to examine. We first refer to the Act of 1917 itself, the title of which is as follows:

"An act making it a misdemeanor for a parent wilfully to neglect to support a child born out of lawful wedlock, whether such child shall have been begotten or shall have been born within or without this Commonwealth; providing punishment therefor, and empowering the court to make an order for support, and to enforce the same. And declaring persons making false statements, in certain cases, guilty of perjury."

Section 1 of the act provides:

"That any parent who shall wilfully neglect or refuse to contribute reasonably to the support and maintenance of a child born out of lawful wedlock shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five hundred dollars ($500), or imprisonment not exceeding six months, or both, with or without hard labor, in the discretion of the court."

Section 2 of the act provides:

"Proceedings under this act may be instituted upon complaint made, under oath or affirmation, by the parent of such child."

Section 3 provides:

"This act shall apply whether such child shall have been begotten or shall have been born within or without this Commonwealth."

It clearly appears that the contest in this case resolves itself into an interpretation of section 3 of said act. This section provides only that, if the conception or the birth of the child occurred within or without the Commonwealth of Pennsylvania, the court has jurisdiction. This section of the act says nothing about the actual residence of the mother or of a child born out of wedlock. Prior to the passage of the act, under former laws relating to fornication and bastardy, a father could not be punished for fornication and bastardy if conception occurred without the State: Commonwealth v. Losey, 79 Pa. Superior Ct. 75; nor could he be compelled to contribute to the support of a child born outside of the State: Commonwealth v. Walker, 2 Dist. R. 727. We think the purpose of this section was to prevent raising such defenses under the Act of 1917, and therefore it should be construed with that purpose in view and limited in its construction solely to meet these legal objections.

But we think the residence of a child is a different and wholly independent matter from the place of its conception or birth. The first section of the said act, in connection with the third section, provides that it is not important whether the child was conceived without the State and born without the State. Because the legislature makes no provision for the nonresidence which arises in the instant case, we must conclude that it should not apply when the conception, birth, and residence of the child are not and never were in Pennsylvania.

The Commonwealth relies upon the authority of Commonwealth v. Hawkins, 80 Pa. Superior Ct. 520; and especially upon the opinion of Judge Keller at page 522. We think this decision does not support the contention of the Commonwealth, for the reason that the mother and child are not residents of this Commonwealth. The facts are stated by Judge Keller as follows:

"It is not disputed that the order when issued was valid and regular. Whether the husband, at the time of his arrest had established his residence in Connecticut, or not, the court had the power to make it. . . ."

The statement of the case (p. 521), is as follows:

"The defendant claimed to be a resident of Connecticut at the time proceedings were started by his wife to compel him to provide for her support and maintenance. He was arrested in Pennsylvania and an order made requiring him to make certain payments for the support of his wife and their daughter. Subsequently the defendant presented a petition for modification or revocation of the order alleging that his wife and daughter had removed from Pennsylvania into Maryland and had become residents of the latter state, and also reciting that the daughter had become of full and legal age and self-supporting."

Again quoting from the opinion of Judge Keller, he states (p. 523):

"When this proceeding was begun, the defendant was 'within the limits of this Commonwealth', and the wife was a resident of Pennsylvania, and remained such for some months thereafter."

It requires no further argument to demonstrate, as stated by Judge Keller,

that at the time the order was made the court had jurisdiction because the wife and daughter were residents of Pennsylvania and the husband was in Pennsylvania when arrested.

Counsel for the Commonwealth further refers to section 4 of the act and contends that it created an additional remedy to the Act of April 13, 1867, P. L. 78. We think this contention is not sound, as a careful reading of section 4 will demonstrate. This section provides, inter alia:

" . . . the court in its discretion . . . shall have the power to make an order, . . . directing the defendant to pay a certain sum periodically, for such time and to such person as the court may direct; and the court shall have the power to suspend the sentence herein provided, and release the defendant from custody on probation, in manner provided by 'An act for relief of wives and children deserted by their husbands and fathers within this Commonwealth,' approved the thirteenth day of April Anno Domini one thousand eight hundred and sixty-seven, and the supplements thereto; . . ."

It will be noted that this last-quoted provision follows a semi-colon after the first part of the section and relates to the power of the court to suspend the sentence provided in section 1 and release the defendant from custody on probation in the manner provided by the Act of 1867. Clearly, this provision relates to the power of the court to suspend the sentence provided in section 1. There is nothing in the Act of 1867 and its supplements relating to suspension of sentences or release of prisoners on probation; therefore the reference to the Act of 1867 is meaningless. This reference to the Act of 1867 does not regulate the procedure in order to require the father of a child born out of wedlock to make periodical contributions for the support of such child. This has already been provided in the first part of section 4 of the Act of 1917, and no further procedural legislation is necessary. If it were intended by the legislature to indicate that the procedure under section 4 should be procedural, then this clause of the act is out of place. In any event it appears in the section itself to have reference to the power of the court to suspend sentence and release the defendant on probation.

We think the logical interpretation of this act is that it supplies a remedy additional to the Act of 1867, relating to conviction and punishment of persons charged with the offense of fornication and bastardy. The Superior Court appears to have been of the same impression when it was said by President Judge Orlady in Commonwealth v. Wibner, 73 Pa. Superior Ct. 349, 352:

"The enactment of this statute has been deemed necessary for the protection of the public and in aid of the mother, as well as of a child born out of lawful wedlock, . . ."

And Judge Bonniwell reached the same conclusion in Commonwealth v. Donovan, 29 Dist. R. 46, 47, from which we quote:

"The act in question is one of those ill-considered, unbalanced legal inventions of short-sighted sociologists, who, with their minds concerned solely in the correction of isolated cases of merit that might be remedied through the means of this act, are oblivious to the disastrous consequences that its general application would cause throughtout the State of Pennsylvania.

"The cunning subterfuge involved in the act, whereby the charge of intercourse is waived and the bastardy charge avoided in order to make it appear that this is a social amelioration act, illustrates only the adroitness of the prime movers in procuring the passage of so improper a piece of legislation, and does not in any way fortify its soundness."

In Commonwealth v. Patterson, 106 Pa. Superior Ct. 433, a prosecution charging the defendant with neglecting and refusing to contribute to the support of his bastard child under the Act of July 11, 1917, P. L. 773, it was held that even though the mother of the child entered into a contract with the father, the defendant, binding the defendant to future payments for the support of his bastard child, nevertheless if they appeared to be unconscionable or unreasonable such contract was no bar to a criminal action for fornication and bastardy —the criminal action being for the protection of the public. No reference is made in this opinion to an appeal to the court of quarter sessions under the Act of 1867 for an additional reasonable contribution for the support of the child.

If the legislature had intended so drastic a reform as to open the courts of this State to a mother or a child neither of whom had been or, so far as the evidence shows, ever intended to be a resident of this State, it would have been easy to say so. In the absence of clear words conferring it in such a case, the courts do not have jurisdiction.

This is a proceeding under an act of assembly, the provisions of which must be strictly complied with to give the court jurisdiction. The requirements of the act are mandatory, and insofar as they are disregarded the proceedings are of no validity. As said by Mr. Justice Woodward in Norwegian Street, 81 Pa. 349, quoting from a note to Dwarris on Statutes, 224, "in all cases in the courts where the authority to proceed is conferred by statute, and where the manner of obtaining jurisdiction is prescribed by statute, the mode of proceeding is mandatory, and must be strictly complied with, or the proceedings will be utterly void." See opinion of Mr. Justice Mestrezat in Harris v. Mercur (no. 1), 202 Pa. 313, 316.

We are of opinion, therefore, that the Act of 1917 should be construed as a supplement to the fornication and bastardy act; that it has the same purpose as that act, namely, to protect the State against having to support illegitimate children; and the act cannot be construed so as to compel the father to support the child where the child for whom support is sought is a nonresident. Futhermore, the consequences of a trial and conviction under the Act of 1917 are far more drastic than a conviction under the Act of 1867. Under the Act of 1917, the defendant is convicted not only of desertion but, by necessary implication, of the crimes of fornication and bastardy, a misdemeanor, and his opportunity for defense is far more important to him than if a conviction simply meant the payment of support. Where the question at issue is the support of a wife or legitimate children, the location of the parties is not very likely to have an important effect on the defense; but where the chief point at issue is the paternity of an illegitimate child, as it is in prosecutions under the Act of 1917, the defendant must be able to obtain witnesses who know the prosecutrix and have actual knowledge of his relations with her, which is impossible where the prosecutrix comes from a distant State or country.

We are of opinion that the motion for a directed verdict should have been sustained. We are further of opinion that we should have affirmed defendant's point for charge. Our refusal to affirm this point we now think was error.

For the reasons above given, we think the verdict of guilty in this case was contrary to law as well as to the facts, and the motion for a new trial must be sustained. It would be useless to retry this case, and the district attorney is permitted to present a motion for nol pros at his convenience.

And now, November 13, 1934, it is ordered, adjudged, and decreed that the motion for a new trial in this case is sustained.